UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCISZEK PIASEK,

                Plaintiff,

vs.

SOUTHFIELD POLICE OFFICERS
DAVID SCHUTZ and OLEH KINAL,

                Defendants.

_____/

Case No. 05-CV-73670

HON. GEORGE CARAM STEEH

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCUMENT # 18)

### INTRODUCTION

Before the court in this case, which stems from the December 2004 arrest of plaintiff Franciszek Piasek for driving while intoxicated, is City of Southfield Police Officers David Schutz and Oleh Kinal's motion for summary judgment. Because questions of material fact preclude a finding at this juncture that qualified immunity bars the federal claims against Schutz and Kinal, dismissal of plaintiff's state law claims of gross negligence or assault and battery as a matter of law is also precluded. However, the court will grant defendants' motion as to plaintiff's claim for intentional infliction of emotional distress. Accordingly, defendant's motion is denied in part and granted in part as set forth below.

BACKGROUND

On December 31, 2004, shortly before 6:30 p.m., Southfield Police Officer David Schutz ("Schutz") began to pursue a car driven by plaintiff Franciszek Piasek.  Schutz testified at deposition that when he began his pursuit, Piasek was driving 86 miles per hour on the Lodge Freeway, in a car that was weaving.  Piasek stated that he activated his police cruiser lights approximately one mile into the chase.  Schutz states that plaintiff did not stop at first, but ultimately pulled over and stopped in a through lane, rather than the shoulder, just south of the I-696 viaduct on the northbound Lodge Freeway.

At this point, it was a few minutes before 6:30 p.m.[1]  Schutz walked to plaintiff's driver side door, opened it, and began talking to the plaintiff.  Schutz asserts he could smell intoxicants on the plaintiff's breath and that the plaintiff had bloodshot eyes.  Ultimately, after Officer Kinal ("Kinal") had stopped in his cruiser and joined Shutz, and also walked alongside plaintiff's vehicle, the plaintiff got out of the car.  Despite the videotape, the parties dispute what happened after this.  The tape shows that an officer held a preliminary breath test device to plaintiff's mouth, and that plaintiff attempted to walk heel to toe for a few steps, and then lost his balance slightly.  There was conversation, and some animation on the part of all parties.  Defendants assert plaintiff pushed or slapped at the arm of Kinal, which they contend was an assault, and "establishes that Plaintiff's level of resistance was escalating."  Defendants' Supplemental Brief, p. 4.

---

[1] Defendants have submitted a DVD of what transpired after this.  The DVD is silent; the officers cannot explain a malfunction or other reason for this problem.

The officers then used some force to take plaintiff to a spot outside of the camera's viewfinder.  At this point, only a portion of an officer's leg is visible for a few moments, and it appears that the plaintiff is struck by an officer's knee several times. The three men then lunge back into the camera's frame, and plaintiff is pushed to the ground.  There, again, the camera does not provide a full image of the three men.  At a later point, another officer has joined Shutz and Kinal, and it appears that plaintiff has been restrained, on the ground below the view of the camera.  That is how the video ends.  The officers are standing, and it appears that a restrained plaintiff, although still outside of the viewfinder, remains on the ground for some time.  All three officers stand around for a minute or two before the DVD ends, and one appears to collect a bottle from the plaintiff's car.  There is no video of the officers getting plaintiff to his feet or any subsequent events.

From reports and testimony, it appears that at some point after the arrest, plaintiff was taken to Providence Hospital for three stitches to a cut on his lip and for a blood draw following the incident.  Plaintiff has included pictures of his legs and face with his briefing, which show extensive bruising to his upper thighs.

A central dispute between the parties involves plaintiff's cooperation.  Plaintiff, who was born in Poland and whose English is somewhat limited, asserts that when he could understand what the officers wanted, he complied.  The officers contend that the plaintiff refused to comply, despite Officer Kinal's attempted communication with plaintiff in Polish and Ukrainian (Kinal testified he speaks Ukrainian fluently, as well as some Russian and some Polish), thus their force was necessary.  Plaintiff testified at deposition that he was kicked and punched, sometimes after the handcuffing, and

3

sprayed with pepper spray by an officer after being handcuffed and placed in a police vehicle.  In answers to interrogatories, he asserted he was sprayed after being handcuffed, and was not permitted to wipe the spray from his eyes.  He also asserts that he defecated in his clothing after being handcuffed, after which an officer called him a "pig" and did not allow him to clean himself.  In answers to interrogatories, he also asserted that when the officer called him a "pig," he punched plaintiff in the face and caused him to start bleeding.

Plaintiff has repeatedly stated that he is not a drinker, and that he had only a couple of drinks before this incident.  He explains he was in Hamtramck, buying Polish vodka for his family's New Year's celebration, and stopped in a corner bar for a couple of drinks.  However, the blood taken at Providence revealed a .20 % blood alcohol level, which defendants contend would require more than nine drinks for a man plaintiff's size.

Defendants state this is not a case of excessive force (or in any case that defendants are entitled to qualified immunity on plaintiff's federal claim), and that it does not meet the required elements for any of plaintiff's state law claims.  They argue that plaintiff's evidence, testimony, and discovery responses do not give rise to a question of material fact.  Defendants contend the case should be dismissed.  Discussion of these arguments is set forth below.

<u>STANDARD</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

4

matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere

5

allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. <u>Anderson</u>, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

<u>ANALYSIS</u>

<u>1. Qualified Immunity as Bar to 42 U.S.C. § 1983 Claim</u>

Plaintiff's count under 42 U.S.C. § 1983 claims that the force used by defendants violated the Fourth Amendment, to which defendants assert the bar of qualified immunity. On a claim of qualified immunity made by an officer, this court has been instructed by the Supreme Court, in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), to decide first whether the facts, taken in a light most favorable to the plaintiff, show a violation of a constitutional right. If the answer to that question is yes, qualified immunity may present a bar to liability for the officer if it would not have been clear to a reasonable officer in his position that his conduct was unlawful. <u>Id</u>., at 201-202.

<u>a. Whether Defendant Violated a Constitutional Right</u>

As outlined above, the first question in this context is whether the alleged facts, considered in a light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. <u>Id</u>. The parties do not dispute that "claims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." <u>Brosseau v. Haugen</u>, 125 S.Ct. 596, 598 (2004) (citing <u>Graham v. Connor</u>, 490 U.S. 386 (1989)). The Supreme Court has emphasized that a decision concerning the reasonableness of the actions examined requires an examination of the "totality of the

6

circumstances" and "careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396.

Plaintiff asserts that he was the victim of gratuitous violence while restrained, including punches and kicks either after he was handcuffed or while two large police officers were sitting on him. He argues the videotape shows no active resistance on the part of the plaintiff, which would have been required under Graham to justify the amount of force used by the officers. The parties do not disagree that gratuitous force used on a suspect who is restrained is unreasonable force under the Fourth Amendment. Plaintiff cites to Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004) for this proposition.

Unfortunately, the police video does not include any sound and does not contain all of the images pertinent to a resolution of this question. Therefore, the possibility of resolving the question of whether the officers engaged in any level of gratuitous violence, and to what extent, becomes unanswerable, given the parties' conflicting versions of the facts. Accordingly, considering the facts presented in the light most favorable to the plaintiff, dismissal of the claim at this juncture for failure to present a constitutional violation is not appropriate.

b. Qualified Immunity as Bar to Liability

Summary judgment could still enter for defendants if the court found that a reasonable officer in Shutz' or Kinal's shoes would have considered his use of force allowable under the Fourth Amendment. To determine "whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

This question requires an examination of the state of the law on the date of the events in question.  "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits."  Walton v. City of Southfield, 995 F.2d 1331 (6th Cir. 1993).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991).

In this case, the parties do not dispute the level of force that was allowable under the circumstances on December 31, 2004.  As discussed in St. John v. Hickey, 411 F.3d 762 (6th Cir. 2005), excessive force under the Fourth Amendment does not depend on finding an assault.  Unnecessary infliction of pain, and even the conditions of detention, such as holding someone face down on cold and muddy ground, may constitute excessive force.  See Walton, 995 F.2d at 1342,  Cornwell v. Dahlberg, 963 F.2d 912, 915 (6th Cir. 1992), Martin v. Heideman, 106 F.3d 1308, 1312-12 (6th Cir. 1997).  Here, the parties are in dispute about the circumstances surrounding plaintiff's arrest.  Plaintiff points to an unpublished case in the Sixth Circuit he contends is similar to that at bar:  Darnell v. Caver, 156 F.3d 1229, involving a drunk driving suspect.  That court found that

> [a] reasonable fact finder could conclude that Caver and Thompson intentionally threw Darnell to the ground and that Caver then either pushed Darnell's head into the pavement or lifted it and let it drop.  No reasonable officer in Caver's position would have considered the use of such force to be allowable under the circumstances.

Id.

8

Plaintiff also cites to <u>Adams v. Metiva</u>, 31 F.3d 375, 387 (6th Cir. 1994), a case in which the Sixth Circuit found that after incapacitating a suspect with mace, continuing to spray mace and otherwise use force was excessive as a matter of law.  Again, this case law is not disputed by defendants.  Rather, they point to their depositions for an explanation of what was happening in the video, to show their actions were reasonable.  Unfortunately for them, plaintiff does not agree with this explanation, leaving this to be a question of fact for the jury.

Where the question of qualified immunity "is completely dependent upon which view of the facts is accepted by the jury," a district court cannot grant qualified immunity to an officer on a claim such as this.[2]  <u>Brandenburg v. Cureton</u>, 882 F.2d 211, 215-16 (6th Cir. 1989).  <u>See</u> <u>also</u> <u>Sova v. City of Mt. Pleasant</u>, 142 F.3d 898 (6th Cir. 1998).  Thus, it is the court's determination that whether an officer in defendants' position would have found the force used in this case reasonable under the circumstances depends on certain findings of fact which are in dispute in this case.  Because defendant's entitlement to qualified immunity turns on the events unfolding in those moments surrounding the arrest, which require the careful assessment of a fact finder, this is a case where disputed material facts require the court to deny defendant's motion for summary judgment on the basis of qualified immunity.

<u>2.  State Law Claims of Gross Negligence, Assault and Battery, Intentional Infliction of</u>
<u>     Emotional Distress</u>

---

[2] Although defendants assert that inconsistencies in plaintiff's version of the facts and differences between plaintiff's version of facts and the police video "render Plaintiff's testimony so incredible that no reasonable juror could find for the plaintiff," citing to Judge Cohn's easily distinguished decision in <u>Allstate Ins. Co. v. Cannon</u>, 644 F.Supp. 31, 33 (E.D. Mich. 1986), the court is not otherwise persuaded.

Under Mich. Comp. Laws Ann. § 691.1407, an employee of a governmental agency has immunity for tort liability for injuries caused while in the course of employment.  Pursuant to § 691.1407(2), however, such an employee is liable for his "gross negligence that is the proximate cause of the injury or damage."  See also Cebreco v. Music Hall Ctr. for the Performing Arts, Inc., 219 Mich.App. 353 (1996).  This is called the "gross negligence exception" to liability.  "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." § 691.1407(7)(a).

Intentional torts, such as assault and battery, are not subject to the bar of governmental immunity in Michigan.  Sudul v. City of Hamtramck, 221 Mich.App. 455, 458 (1997).  A claim of assault and battery requires a showing that a police officer used force that was not necessary, necessary force being "that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary."  Anderson v. Antal, 191 F.3d 451 (6th Cir. 1999).

For a claim of intentional infliction of emotional distress, a plaintiff must prove the following: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  Hayley v. Allstate Ins. Co., 262 Mich.App. 571, 577 (2004).  That case also held that the conduct complained of must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id.

10

Because the court has found that a question of material fact exists as to whether an officer in defendants' situation would find the force applied here to be reasonable under the circumstances presented, the court finds that there is also a question of material fact as to whether defendant's acts a) were grossly negligent under Michigan law, or b) satisfy the elements of assault and battery, and accordingly, defendants' motion for summary judgment will be denied as to these claims as well.

The court is convinced, however, that plaintiff cannot establish his claim of intentional infliction of emotional distress, as neither his proffers nor his argument convince the court he has a viable claim of behavior on the part of the officers that was "utterly intolerable in a civilized community." Id. Defendants' motion for summary judgment will thus be granted as to this state law claim.

## CONCLUSION

For the reasons given above, the court hereby GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: January 23, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

11

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 6, 2007, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk